**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DISTRICT 65, RETAIL, WHOLESALE & DEPARTMENT STORE UNION, AFL-CIO, Respondent.**

**Nos. 290-293, Dockets 30771-30774.**

United States Court of Appeals Second Circuit.

Argued Feb. 8, 1967.

Decided March 24, 1967.

Nancy Sherman, Atty., N.L.R.B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel

Mallet-Prevost, Asst. Gen. Counsel, Francis Flannery, Atty., National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

Eugene G. Eisner, New York City, for respondent.

Before MOORE, FRIENDLY and SMITH, Circuit Judges.

MOORE, Circuit Judge:

The National Labor Relations Board (NLRB) petitions for enforcement of its order directed against District 65, Retail, Wholesale & Department Store Union, AFL–CIO (the Union) requiring the Union to cease and desist from entering the premises of the four employers directly involved in this case and any other employers in the geographic area of its jurisdiction, "uninvited or over the protests of the employers, during working hours, and by and through members of such groups going to the work places of the employees and there either orally or by distribution of literature, soliciting their support of, or membership in, the Union, thereby preventing said employees from engaging in their normal work, and making threats, either veiled or direct, of violence to any employee or other person in the premises, or of adverse action respecting their employment; and shoving or pushing or in any other manner restricting the freedom of action of any such other person."

The Board adopted the Recommended Order of the Trial Examiner. 157 NLRB No. 52.

The trouble started when the Union decided to try to organize and to bring into its Union the employees of four companies in New York City, engaged in the Direct Mail Industry. The operation was carried out with military precision. Four organizers were employed by the Union, each to lead the attack within his "target area." The plan, essentially the same in all four cases, was for the organizer, accompanied by a sizable group of persons acting on behalf of the Union, to descend upon, and "without invitation or permission" to enter, the offices of the four companies during working hours and by haranguing, by threats, and by the dissemination of Union literature, to urge the employees to join their Union. A few specific incidents, all as found by the Trial Examiner and adopted by the Board, suffice to illustrate the aggravated character of the Union's conduct.

*B. Brown Associates, Inc.*

At about 11:00 A.M. on March 24, 1965, not less than 25 men and women, representing the Union, without permission "came swarming in" the plant of B. Brown, moved to the places where the employees were working, talked to the employees concerning the Union, and handed them Union literature. When requested to leave, one of the group said, "You can't do anything about it, if you want to, you call the police." Naturally, because of the commotion, production came to a standstill. The Examiner found, upon credible testimony, that the Union's conduct violated Section 8(b) (1) (A).

*Saint John Associates, Inc.*

On March 26, 1965, a Union group "probably more than 25," unannounced and uninvited, using the front elevator, entered the Saint John premises, went to the work stations of the employees and urged them to join the Union. They refused to leave when so requested. At the same time, using accepted military strategy, another group of about 12 men made an assault from the rear, using a freight elevator and a rear stairway. Mrs. Christoverson, a Vice-President of Saint John, attempting to prevent them from entering the premises, was bodily shoved aside. When she, in turn, placed her hands on the full-time Union organizer leader in an effort to push or ease him out of the plant, anomalously it was this gentleman who became so fearful of bodily harm at the hands of this lady and so suddenly mindful of orderly procedures that he threatened her by saying, "If you don't take your hand off me, I'll have you arrested for assault."

Another Vice-President actually had to threaten to call the police. In brief, the Examiner's conclusions that for approxi-

mately two hours, work came to a virtual standstill, that several employees were frightened and in fear of bodily harm at the hands of the Unionists and that their acts and statements were clearly violative of Section 8(b) (1) (A), are supported by substantial proof.

*Columbia Letter Co., Inc.*

The assault here on the morning of March 26, 1965 was led by an advance guard of three, quickly followed by some fifteen. Ignoring requests to leave, they went around the plant, handing out literature and talking to employees. It was necessary to call the police.

*Mail & Media, Inc.*

Learning of these raids, this company hired an armed uniformed guard to protect its premises against unauthorized entrance. In the afternoon of March 29, 1965 some twenty-five Union members and agents, finding the only unlocked door, pushed the guard aside (one threatening to "kill him with his own gun"; another "to close the place up") and created a commotion. Work was interrupted and threats were hurled at management. Two women alone in a large room who failed to sign cards were surrounded by eight or nine Union representatives who threatened to return and "shut the place."

Section 8(b) (1) (A) of the Act forbids a Union from restraining or coercing employees in the exercise of their rights under section 7, one of which rights is "to refrain from any or all of such [collective bargaining] activities."

The conclusions of the Trial Examiner and the Board that the Union's conduct, which included threats and physical violence, constituted a violation of section 8(b) (1) (A) are supported by overwhelming proof. If the much used phrase "law and order" is to have any meaning in our society, the Board's decision supporting these words must be enforced.

The manner in which the Union proceeded justifies the broadest type of order.

Enforcement granted.