Filed 10/14/16; opinion on rehearing

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| WALMART STORES, INC. et al., | B259926 |
| Plaintiffs and Respondents. | (Los Angeles County Super. Ct. No. BC508587) |
| v. | |
| UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION et al., | |
| Defendants and Appellants, | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Ernest M. Hiroshige, Judge. Affirmed.

Weinberg, Roger & Rosenfeld, David A. Rosenfeld, Emily P. Rich, Jannah Manansala, Michael D. Burstein, David Delgado; and George Wiszynski for Defendants and Appellants.

Steptoe & Johnson, Jason Levin, Dylan Ruga, Steven D. Wheeless, Kirsten Hicks Spira, Douglas D. Janicik; Manatt, Phelps & Phillips and Matthew P. Kanny for Plaintiffs and Respondents.

_____

In September 2014, the trial court issued a permanent injunction barring defendants United Food and Commercial Workers International Union (UFCW) and Organization United for Respect at Walmart (OUR Walmart; collectively the union) from conducting demonstrations inside stores owned by Wal-Mart Stores, Inc., and affiliated companies (collectively Walmart). On appeal, the union contends the trial court had no jurisdiction to enter the injunction because the matter was preempted by the National Labor Relations Act (29 U.S.C. § 151, et seq.; NLRA). We conclude the NLRA does not preempt Walmart's trespass action.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

In 2011, the union began organizing and conducting demonstrations at Walmart stores across the United States, including in California. The demonstrations were part of a union campaign designed to induce Walmart to provide its employees better working conditions and pay. The campaign also sought to pressure Walmart to reinstate employees the union alleged Walmart had discharged or disciplined for exercising their rights under the NLRA. The union publicly indicated it was not seeking to act as the representative or bargaining agent for Walmart employees.[2] During the demonstrations in California, large numbers of people typically assembled outside a store. Groups of demonstrators also entered stores. As many as 30 or 40 demonstrators might enter a store at one time; on at least one occasion, 100 demonstrators silently entered a store in San Lorenzo to memorialize a deceased employee. Inside the stores, demonstrator activities included loud chanting, singing, marching, carrying posters or placards, taking photographs, recording video footage, and distributing written materials or business

---

[1] On this court's own motion, rehearing was granted with respect to the court's opinion filed on June 30, 2016.

[2] Online materials advertising the demonstrations included a "legal disclaimer" such as the following: "UFCW and OUR Walmart have the purpose of helping Walmart employees as individuals or groups in their dealings with Walmart over labor rights and standards and their efforts to have Walmart publicly commit to adhering to labor rights and standards. UFCW and OUR Walmart have no intent to have Walmart recognize or bargain with UFCW or OUR Walmart as the representative of Walmart employees."

2

cards. On some occasions, demonstrators asked to speak with a manager or presented written demands to a supervisory employee. In other cases, the activity was described as a "flash mob," meaning a group of people entered the store and, at a pre-arranged time, they engaged in coordinated activity such as singing and dancing. Walmart witnesses described one incident in which demonstrators entered a store and released helium balloons bearing campaign-related messages.[3] According to Walmart's witnesses, demonstrators did not immediately comply when store managers asked them to leave.

In March 2013, Walmart filed an unfair labor practice charge with the National Labor Relations Board (NLRB). In the charge, Walmart alleged defendants violated Section 8, subdivision (b)(1)(A) of the NLRA (Section 8(b)(1)(A); 29 U.S.C. § 158, subd. (b)(1)(A)) by "planning, orchestrating, and conducting a series of unauthorized and blatantly trespassory in-store mass demonstrations, invasive 'flash mobs,' and other confrontational group activities at numerous facilities nationwide . . . by which the UFCW restrained and coerced employees in the exercise of their Section 7 rights (which includes the right to refrain from supporting the UFCW) by attempting to impose its will on local facility management in front of facility employees through the sheer force of a mass of moving bodies despite requests and direction by local management to leave." The unfair labor practice charge alleged UFCW coerced employees when it blocked ingress and egress from Walmart facilities, filmed employees reacting to the in-store demonstrations, threatened violence, and attempted to make "improper payments to employees to yield to the UFCW's wishes." The charge challenged union conduct across the United States. It also complained of union conduct outside Walmart stores, including picketing and demonstrations near store entrances and in store parking lots.

The record does not indicate what action, if any, the NLRB took on Walmart's unfair labor practice charge. However, in June 2013, Walmart's counsel represented in

---

[3] A union witness indicated the union only gave the balloons to customers outside the store. He denied authorizing any release of balloons in the store.

3

an Arkansas court that Walmart had withdrawn the charges with respect to the in-store demonstrations.**4**

In May 2013, Walmart filed a complaint in the Los Angeles superior court for trespass, seeking injunctive and declaratory relief against the union.**5** The complaint alleged the union trespassed inside Walmart stores to engage in "unauthorized activities." These included: "blocking ingress and egress at store entrances; patrolling through the sales floor and soliciting customers and working associates; parading and initiating confrontational demonstrations; shouting through bullhorns and carrying banners and signs; flash mobs; handbilling flyers and business cards to customers and working associates; setting free tens of balloons inside the store; leaving perishable goods in carts and walking away without paying; blocking customer traffic inside the store; and tracking down and confronting store managers on the sales floor to make various demands, and refusing to leave until the manager responds to them." The complaint alleged these activities diverted management from their jobs, and "interfered" with Walmart employees and customers. The complaint described several demonstrations that occurred in

---

**4**    We have granted the parties' requests for judicial notice.

**5**    Walmart filed similar suits in other states. It secured a permanent injunction in Arkansas, and prevailed on preemption arguments in trial courts in Colorado, Ohio, Florida, Maryland, and Texas. Walmart has informed this court that least some of these rulings have been challenged on appeal. As discussed in greater detail below, a Washington state court found the NLRA preempted Walmart's claims. A state appellate court affirmed the trial court ruling. (*Wal-Mart Stores, Inc. v. United Food & Commer. Workers Int'l. Union* (Wash.Ct.App. 2015) 354 P.3d 31, review den. (Wash. 2016) 367 P.3d 1084 [table] (*Walmart Stores*).) While this case was pending, Colorado, Maryland and Florida appellate courts affirmed lower court orders finding Walmart's trespass claims were not preempted. (*Wal-Mart Stores, Inc. v. United Food & Commer. Workers Int'l Union* (Colo.Ct.App., May 5, 2016, No. 14CA2061) [2016 WL 2605737], cert. den. Oct. 3, 2016, No. 2016SC478; *United Food & Commer. v. Wal-Mart Stores, Inc.* (Fla.Ct.App. 2016) 192 So.3d 585, rehg. den. Oct. 11, 2016, No. SC16-1102; *United Food & Commer. Workers Int'l Union v. Wal-Mart Stores* (Md.Ct.Spec.App. 2016) 228 Md.App.203, cert. granted Sept. 2, 2016, No. 242 [2016 WL 5723986] [table].) The Maryland case is now under review by that state's highest court.

4

Walmart's California stores in 2012 and 2013. Walmart had identified and detailed some of these incidents in the unfair labor practice charge.

The union argued the action was preempted because the NLRA arguably prohibited the union conduct Walmart was seeking to enjoin. The union did not argue its conduct was arguably protected under the NLRA. The trial court rejected the preemption argument in advance of preliminary injunction proceedings. In November 2013, following a seven–day evidentiary hearing, the court found the public had a limited invitation to Walmart's California stores to shop, the invitation did not transform the stores into a public forum, and the union had unlawfully trespassed inside Walmart's stores across California. The court further concluded the union and its supporters committed and threatened to commit "unlawful acts," including "blocking ingress and egress and aisle ways and customers' mobility inside the store, littering balloons and flyers throughout stores, and blowing air horns, screaming and conducting flash mobs . . . . As part of Defendants' use of flash mobs inside Walmart's stores, Defendants have gathered and organized demonstrators who have shown up unannounced and entered Walmart's stores to demonstrate by marching around the store, performing loud songs and yelling chants or slogans and exiting the store." The court found the union's conduct substantially or irreparably harmed Walmart and the store had no adequate remedy at law.

The trial court issued a preliminary injunction prohibiting the union, and persons acting in concert with the union (excluding Walmart employees), from entering Walmart's stores to engage in "unlawful activities, such as picketing, patrolling, marching, parading, 'flash mobs,' demonstrations, handbilling, solicitation, manager confrontations, or customer disruptions. . . ." The injunction does not prohibit union representatives from accompanying a Walmart employee in discussions with a manager to discuss labor conditions.[6]

---

[6]     Such discussions are to occur in "a business-like manner using normal voice tones," and may include no more than two union representatives at one time. The order

5

In September 2014, the parties stipulated to the issuance of a permanent injunction with terms identical to those of the preliminary injunction, to expedite appellate review. Pursuant to the parties' stipulation, the trial court entered judgment in favor of Walmart on all causes of action in the complaint. This appeal timely followed. The sole issue on appeal is whether the NLRA preempts Walmart's trespass action.

## DISCUSSION

### I.  General Principles of NLRA Preemption

Section 7 of the NLRA "establishes the right of workers to organize and engage in collective action concerning conditions of employment. (29 U.S.C. § 157.)" (*Inter-Modal Rail Employees Assn v. Burlington Northern & Santa Fe Ry. Co.* (1999) 73 Cal.App.4th 918, 924.) Section 8 of the NLRA prohibits both employers and labor organizations from interfering with these "Section 7" rights, including the right of employees to refrain from participating in collective action. (29 U.S.C. §§ 157, 158.) Walmart's unfair labor practice charge invoked Section 8(b)(1)(A), which provides it is an unfair labor practice for a labor organization or its agents "to restrain or coerce employees in the exercise of the rights guaranteed in section 157 of this title . . . ."

As set forth in *San Diego Unions v. Garmon* (1959) 359 U.S. 236 (*Garmon*), the NLRB has exclusive jurisdiction over disputes involving unfair labor practices, and "state jurisdiction must yield" when state action would regulate conduct governed by the NLRA. (*Id.* at pp. 244-245.) While the "'*Garmon* guidelines [are not to be applied] in a literal, mechanical fashion,' [citation], if the conduct at issue is arguably prohibited or protected otherwise applicable state law and procedures are ordinarily pre-empted. [Citation.] When, however, the conduct at issue is only a peripheral concern of the Act or touches on interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress intended to deprive the State of the power to act, we refuse to invalidate state regulation

---

further notes that after such discussions, Walmart may schedule a meeting under its "open-door policy," which would preclude any union representatives from being present, "subject to any NLRB review and decision about this Walmart procedure."

or sanction of the conduct." (*Operating Engineers v. Jones* (1983) 460 U.S. 669, 676 (*Jones*); *Service by Medallion, Inc. v. Clorox Co.* (1996) 44 Cal.App.4th 1807, 1813-1814.) The exception for conduct that touches on interests deeply rooted in local feeling has since been referred to as the "local interest" exception.

Whether the NLRA preempts a cause of action is an issue of law we review de novo. (*Hillhaven Oakland Nursing Etc. Center v. Health Care Workers Union* (1996) 41 Cal.App.4th 846, 853 (*Hillhaven*).) A court first determines whether the "conduct that the State seeks . . . to make the basis of liability is actually or arguably protected or prohibited by the NLRA." (*Jones*, *supra*, 460 U.S. at p. 676.) If, despite being arguably protected or prohibited by the NLRA, the conduct at issue involves a deeply-rooted local interest, the question of whether the state action is allowed "involves a sensitive balancing of any harm to the regulatory scheme established by Congress, either in terms of negating the Board's exclusive jurisdiction or in terms of conflicting substantive rules, and the importance of the asserted cause of action to the state as a protection to its citizens." (*Ibid.*)

## II. The Trespass Action Is Not Preempted Because the "Local Interest" Exception Applies

The union does not contend the challenged conduct is arguably protected under the NLRA.**7** Instead, the union asserts the NLRA "arguably prohibits" the union's challenged conduct, triggering preemption. Although Walmart appears to assert some

---

**7** We also note the union does not allege, and there is no suggestion in the record, that Walmart permits inside its stores demonstrations that are not labor-related, or other non-shopping activity unrelated to a labor dispute, such that Walmart's attempts to prohibit the union's demonstrations in this case could be deemed anti-union disparate treatment. (See e.g., *Salmon Run Shopping Center LLC v. NLRB* (2d Cir. 2008) 534 F.3d 108, 115-117 [discussing discrimination claims under Section 7 and *Labor Board v. Babcock & Wilcox Co.* (1956) 351 U.S. 105; *Babcock*-type discrimination requires that the "private property owner must treat a nonemployee [union speaker] who seeks to communicate on a subject protected by section 7 less favorably than another person communicating on the same subject."].)

7

portions of the union's conduct fall outside of *Garmon* preemption rules, it too argues at least some of the union's conduct is arguably prohibited under the NLRA.  But that the NLRA arguably prohibits the challenged conduct does not end our analysis.[8]

Under *Garmon* guidelines, state action concerning arguably prohibited conduct is "ordinarily pre-empted." (*Jones, supra,* 460 U.S. at p. 676.)  In other words, there is a presumption of preemption.  (*Belknap, Inc. v. Hale* (1983) 463 U.S. 491, 498.)  Yet, as noted above, when the "conduct at issue is only a peripheral concern of the Act," or "touches [on] interests so deeply rooted in local feeling and responsibility" that we cannot infer that Congress intended to deprive the state of the ability to regulate or sanction the conduct, the presumption of preemption is overcome.  (*Jones, supra,* 460 U.S. at p. 676.)  We conclude the local interest exception applies in this case.

### A.  *Sears* **Governs This Case**

To evaluate this issue, we turn to *Sears, Roebuck & Co. v. Carpenters* (1978) 436 U.S. 180 (*Sears*), in which the high court established an analytical framework to determine *Garmon* preemption issues, including the application of the local interest exception, in the context of a California trespass case.  In *Sears*, the union sought to induce the retailer Sears to use union labor for carpentry work at one of its department stores in Chula Vista.  The union established picket lines on Sears's privately-owned walkways next to the store and in the adjacent parking area.  The picketing was "peaceful and orderly." (*Id.* at p. 182.)  Sears filed a complaint in superior court seeking injunctive relief for trespass.  The trial court issued a preliminary injunction.  (*Id.* at p. 183.)

---

[8]     Walmart asserts it is well established that the NLRA does not preempt state claims seeking to enjoin a union's blockage of ingress and egress.  While there are authorities to support this argument (*Automobile Workers v. Russell* (1958) 356 U.S. 634, 640; *Youngdahl v. Rainfair, Inc.* (1957) 355 U.S. 131, 139; *Kaplan's Fruit & Produce Co. v. Superior Court* (1979) 26 Cal.3d 60), obstruction of access was only one facet of the conduct challenged in Walmart's trespass action.  Indeed, the trial court's injunction covered more conduct than simply the union's blockage of ingress and egress.  We therefore find it necessary to evaluate the claims of arguably prohibited conduct more fully.

8

The California Supreme Court subsequently concluded the NLRA preempted state court jurisdiction over the trespass claim. The court reasoned the picketing was arguably protected as a concerted activity under Section 7—picketing for employees' mutual aid or protection—and was also arguably prohibited under section 8(b)(7)(C) as unlawful recognitional picketing. (*Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters* (1976) 17 Cal.3d 893, 898-900.) The court rejected the application of the local interest exception. It reasoned the United States Supreme Court had not created a judicial exception to *Garmon* to "withdraw from the exclusive jurisdiction of the Board those peaceful activities . . . which, although arguably subject to section 7 or section 8 of the Act, are nevertheless trespassory in nature." (17 Cal.3d at p. 905.) The court noted cases cited in *Garmon* regarding the local interest exception involved mass picketing and violence. (17 Cal.3d at p. 904.) Following an earlier California Supreme Court case, the court explained: "'[u]nlike the power to prevent violence and public disorder, the power to prohibit peaceful picketing that trespasses on the premises of employers involved in labor disputes would "leave the States free to regulate conduct so plainly within the aim of federal regulation . . . ."'" [Citation.]" (17 Cal.3d at p. 905.) Preemption was therefore required.

The United States Supreme Court granted certiorari to consider "whether, or under what circumstances, a state court has power to enforce local trespass laws against a union's peaceful picketing." (*Sears, supra*, 436 U.S. at p. 184, fn. omitted.) The court also framed the question as "whether the arguable illegality of the picketing as a matter of federal law should oust the state court of jurisdiction to enjoin its trespassory aspects." (*Id.* at p. 190.)

The *Sears* court set forth two guides for evaluating preemption, one for conduct the NLRA arguably prohibits, and one for conduct the NLRA arguably protects. We are concerned here with the approach for arguably prohibited conduct. The court affirmed that although a state suit based on arguably prohibited conduct is presumed preempted, the presumption is overcome if the state action "touches 'interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction,

9

we could not infer that Congress had deprived the States of the power to act.' [Citation.]" (*Sears, supra*, 436 U.S. at pp. 194-195.)  The court identified two factors that had warranted application of the local interest exception in prior cases: "First, there existed a significant state interest in protecting the citizen from the challenged conduct.  Second, although the challenged conduct occurred in the course of a labor dispute and an unfair labor practice charge could have been filed, the exercise of state jurisdiction over the tort claim entailed little risk of interference with the regulatory jurisdiction of the Labor Board.  Although the arguable federal violation and the state tort arose in the same factual setting, the respective controversies presented to the state and federal forums would not have been the same." (*Id.* at pp. 196-197, fn. omitted.)

The court condensed these factors into a single "critical inquiry":  "[W]hether the controversy presented to the state court is identical to . . . or different from . . . that which could have been, but was not, presented to the Labor Board.  For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid." (*Sears, supra*, 436 U.S. at p. 197, fn. omitted; see *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.* (9th Cir. 2014) 768 F.3d 938, 953 (*Retail Prop.*) [High Court reduced factors warranting a departure from general preemption guidelines in local interest cases to a single test].)

Applying this test to Sears's challenge to the union's peaceful trespassory conduct, the Court concluded the controversy Sears could have presented to the NLRB was not the same as that presented to the state court.  The issue before the NLRB would have been "whether the picketing had a recognitional or work-reassignment objective; decision of that issue would have entailed relatively complex factual and legal determinations completely unrelated to the simple question whether a trespass had occurred." (*Sears, supra*, 436 U.S. at p. 198, fn. omitted.)  The court characterized the dispute in state court as "limited. Sears asserted no claim that the picketing itself violated any state or federal law.  It sought simply to remove the pickets from its property to the public walkways, and

10

the injunction issued by the state court was strictly confined to the relief sought. Thus, as a matter of state law, the location of the picketing was illegal but the picketing itself was unobjectionable." (*Id.* at p. 185.) As a result, "whether the picketing had an objective proscribed by federal law was irrelevant to the state claim. Accordingly, permitting the state court to adjudicate Sears' trespass claim would create no realistic risk of interference with the Labor Board's primary jurisdiction to enforce the statutory prohibition against unfair labor practices." (*Id.* at p. 198.)[9]

The "identical controversy" test has since been applied by numerous courts, including in California. (See *Service by Medallion, Inc. v. Clorox Co., supra,* 44 Cal.App.4th at pp. 1814-1816; *Hillhaven, supra,* 41 Cal.App.4th at pp. 856-857; *Kelecheva v. Multivision Cable T.V. Corp.* (1993) 18 Cal.App.4th 521, 527-528.) For example, in *Kaplan's Fruit & Produce Co. v. Superior Court, supra,* 26 Cal.3d 60 (*Kaplan's*), the court considered whether the Agricultural Labor Relations Act (ALRA), which is modeled on the NLRA, preempted claims that union pickets were obstructing ingress and egress to the plaintiff's wholesale facility. (*Id.* at p. 65.)

The *Kaplan's* court concluded the obstruction of access was clearly an unprotected activity, rendering the *Sears* "arguably prohibited" analysis relevant. (*Kaplan's, supra,* 26 Cal.3d at pp. 70-71.) The court reasoned the issue that would be presented to the NLRB in an obstruction case is "different from, and far narrower than, the issue which may be presented to the superior court." (*Id.* at p. 71.) Picketing that obstructs access may be an unfair labor practice to the extent it "restrains or coerces nonstriking

---

[9]    The dissent in *Sears*—Justice Brennan, joined by Justices Stewart and Marshall— would have found the arguably protected nature of the picketing in *Sears* mandated preemption. (*Sears*, *supra*, 436 U.S. at pp. 225-226.) However, even the dissent suggested conduct similar to that at issue in this case falls outside the NLRB's exclusive jurisdiction: "It bears emphasizing that *Garmon* only partially pre-empts an employer's remedies against unlawful trespassory picketing. A state court may, of course, enjoin any picketing that is clearly unprotected by the Act, *e.g., peaceful, nonobstructive picketing occurring within a retail store*. [Citations.] And, as already indicated, state courts have jurisdiction over picketing that is obstructive, or involves large groups of persons, or otherwise entails a serious threat of violence." (*Id.* at pp. 226-227, italics added.)

11

employees in the exercise of their right to refrain from concerted activities." (*Ibid*.) But the court found that while there was some evidence the union's picket line interfered with Kaplan's nonstrking employees, "that obstruction is a minor facet of the controversy; the principal objective of the pickets, and of the alleged interference to access, was to persuade prospective customers not to do business with Kaplan's." (*Id.* at pp. 71-72, italics and fn. omitted.) The court concluded blockage of customer access is not in itself an unfair labor practice under the ALRA. Local court decisions enjoining obstructions to access thus "do not threaten significant interference with labor board adjudications." (*Id.* at p. 75; see also *Bertuccio v. Superior Court* (1981) 118 Cal.App.3d 363, 369-371.)

As in *Sears* and *Kaplan's*, this case presents a state claim challenging union conduct the NLRA arguably prohibits, since certain aspects of indoor demonstrations could, under some circumstances, constitute an unfair labor practice. (See *District 65, Retail, Wholesale & Department Store Union* (1966) 157 NLRB 615 (*District 65*), enforced *NLRB v. District 65, Retail, Wholesale & Dept. Store Union* (2d Cir. 1967) 375 F.2d 745.) Yet, *Sears* indicates peaceful trespass may be an issue deeply rooted in local feeling such that the local interest exception to preemption may apply.

We reject the union's contention that the local interest exception only applies to violent trespass. This contention is inconsistent with *Sears* which not only applied the exception to a state action challenging peaceful trespassory picketing, but also implicitly rejected the California Supreme Court's ruling concluding state courts had no power to prohibit peaceful trespassory picketing arising out of a labor dispute and limiting the local interest exception to instances of mass picketing or violence. (See *Retail Prop. supra,* 768 F.3d at p. 956 ["*Sears* . . . confirmed what the Court said in *Garmon* . . . Trespass is one 'threat[] to public order' that is not totally preempted by the NLRA."]; *Hillhaven, supra,* 41 Cal.App.4th at p. 855 [*Sears* "expanded the local interest exception

to a case involving peaceful, nonobstructive picketing on an employer's private property."].)[10]

A trespass claim may fit within the local interest exception to preemption. We therefore address the "critical inquiry": whether the controversy presented to the NLRB and the state court are identical in this case. (*Sears*, *supra*, 436 U.S. at p. 197.)

## B. The Controversies Are Not Identical

Walmart's original unfair labor practice charge alleged a violation of Section 8(b)(1)(A). A union violates Section 8(b)(1)(A) when it engages in conduct that is "'reasonably calculated to coerce anti-union or non-union [employees] in the exercise of their right, under the amended Act, to refrain from'" participating in collective activity, such as supporting the union or striking. (*International Brotherhood of Electrical Workers, Local Union No. 98 and Tri-M Group, LLC* (2007) 350 NLRB 1104, 1107, citing *Ladies Garment Workers (Seamprufe, Inc.)* (1949) 82 NLRB 892, 894.) The focus of Walmart's charge was necessarily whether the union's activities constituted unlawful restraint or coercion of employees in the exercise of their Section 7 rights.

On the other hand, the issue in Walmart's civil complaint was whether the union's activities constituted a trespass—an "unlawful interference with [Walmart's] possession"—under California law. (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 693.) Walmart's theory of trespass was that although it invites the public into its stores, the invitation is conditional and restricted to entry for shopping. (See e.g., 5 Witkin, Summary of Cal. Law, *supra*, Torts, § 696, pp. 1021-1022, citing *Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1141.) The complaint alleged the union exceeded that conditional invitation by conducting activities other than shopping in the stores. The critical question in the civil claim was whether the union's activities inside Walmart stores exceeded the conditional license it had to be there, sufficient to interfere with Walmart's possession. Whether the demonstrations had an objective or

---

[10] The union argues the *Sears* court did not apply the local interest exception in the case before it. Our reading of *Sears* and its progeny persuades us that the case was, in fact, an analysis and application of the local interest exception to preemption.

13

effect proscribed by federal labor law was irrelevant to the trespass claim. As in *Sears*, the controversies presented to the NLRB and that presented to the trial court were not identical.

The union contends that, unlike the trespass claim in *Sears*, which the court characterized as a challenge only to the location of the union's picketing, Walmart's trespass claim concerned the union activity itself, not the location of that conduct.[11] We disagree. The *Sears* court's statement that the issue in the lower court was the "location of the picketing rather than the picketing itself" indicated the state court trespass claim was unconcerned with the content of the picketing, or the fact of the picketing. This is illustrated by the *Sears* court's discussion of *Garner v. Teamsters Union* (1953) 346 U.S. 485 (*Garner*), which the court offered as an example of identical controversies. In *Garner*, the state court enjoined a union's peaceful organizational picketing on the ground the picketing violated the state labor relations act. The state court found the union's purpose in picketing was to coerce the targeted employers into compelling their employees to join the union. (*Id.* at pp. 487, 497.) *Garner* thus involved a case in which the "picketing itself" was the controversy of the state court action. (*Sears*, *supra*, 436 U.S. at pp. 192-194.) In contrast, in *Sears*, the trespass action asserted the picketing was unlawful because of where it was conducted, without regard to the objective, target, or effect of the picketing. Sears did not ask the court to keep the union from picketing, irrespective of location (the picketing itself). But it was asking the court to prohibit the union from picketing on its walkways (the location of the picketing). In the same way, this case is about the location of the demonstrations rather than the demonstrations themselves. Walmart did not ask the trial court to keep the union from demonstrating, irrespective of location. It sought to keep the union from demonstrating inside Walmart stores.

---

[11]    We note *Sears* also involved a retail property where the public was generally invited to enter onto the property to shop for the goods sold in the store. (See e.g., *Sears, supra*, 436 U.S. at p. 226 (dissent) [picketing was confined to a portion of Sears's property open to the public].)

We acknowledge this case is complicated by Walmart's manner of pleading and proving the trespass allegations, which involved significant detail and included evidence that, in theory, could have been offered to attempt to show interference with employees' Section 7 rights. Allegations in the complaint described demonstrators handing out cards to Walmart employees and the union's plans to solicit employees working in the stores. Walmart supported the motion for a preliminary injunction with declarations from employees who witnessed the demonstrations, some of whom declared the union activity made them feel intimidated, embarrassed, upset, or fearful there would be violence. Similarly, some of the testimony at the preliminary injunction hearing touched on topics such as whether and how the union representatives or demonstrators interacted with Walmart employees, and the testifying employees' reactions to the demonstrations.

Walmart further concedes that to make a showing of irreparable harm necessary to support the issuance of a preliminary injunction, it relied on evidence of the nature of the union's "non-shopping conduct," including disruption to business activities, the distraction of Walmart employees, and intimidation and annoyance of customers. For its part, the unfair labor practice charge appeared to include a theory that the trespassory nature of the demonstrations was itself coercive. While the arguable violations of federal labor law in *Sears*—unlawful organizational or recognitional picketing—could be seen as markedly distinct from the issue of trespass and the location of the union conduct, here the alleged unlawful efforts to coerce or restrain Walmart employees' exercise of their Section 7 rights was not completely unrelated to the location of the union conduct.

Still, the gravamen of Walmart's claim in the trial court was that the union activities were unlawful because they were occurring inside Walmart stores. The effect of the demonstrations on employees was a minor facet of the controversy presented to the trial court. (*Kaplan's*, *supra,* 26 Cal.3d at p. 72.) The trespass claim concerned only the issues of whether Walmart had exclusive use of the properties and whether the demonstrations went beyond the conditional or restricted license to enter Walmart

15

extended to the public.[12] The issues of harm were primarily about disruption of business and customer access. This was not the same legal controversy underlying the unfair labor practice charge, namely that the union's actions were unlawful because they coerced or restrained employees in the exercise of their rights not to organize or engage in collective activity, whether inside or outside the stores. To the extent Walmart claimed the union's alleged trespass constituted an unfair labor practice because it tended to coerce or restrain employees in the exercise of their Section 7 rights, that claim was not identical to the state action for trespass, in which the *objective* of the alleged encroachment on Walmart's right of possession, or the *effect* of the union's conduct on employees, were not issues the trial court needed to consider or resolve to adjudicate the trespass claim.

A NLRB decision Walmart cited in the unfair labor practice charge, *District 65*, illustrates this distinction. The union asserts Walmart's citation to the decision indicates the legal theories in the charge and the trespass complaint were identical because *District 65* concerned a Section 8(b)(1)(A) violation arising out of trespassory union organizational activity. But a review of the decision reveals the difference between the state trespass claim and the Section 8(b)(1)(A) charge. In *District 65*, the employer filed an unfair labor practice charge after groups of 15 to 30 union organizers and representatives entered the employer's premises without permission, distributed union literature to employees, solicited the employees' membership in the union, interrupted work, and refused to leave when asked. (*District 65, supra,* 157 NLRB at pp. 617-622.)

---

**12**    This is confirmed by the issues raised in the parties' post-hearing briefs: Whether Walmart had exclusive possession of its stores sufficient to be able to obtain an injunction for trespass, and whether Walmart made an adequate showing to secure injunctive relief under California Labor Code sections 1138.1 and 1138.2. Coercion or restraint of employees' exercise of their right not to participate in collective action was not an issue in these summaries and arguments of the issues to be decided by the court following the hearing.

The sole legal issue presented to the NLRB was coercion and the "coercive effect" of the union's conduct under Section 8(b)(1)(A). (*District 65, supra,* 157 NLRB at p. 622.) The decision described the problem confronting the NLRB as one of balancing the conflicting rights of employees to join and assist labor organizations and to refrain from joining and assisting labor rights organizations. As a result, "the Board must consider in its interpretation of Section 8(b)(1)(A), and the resultant query as to whether the Union's conduct here is coercive, which choice between the two conflicting employee rights, best serves the broad, underlying principle of the Act to avoid, or substantially minimize, industrial strife." (157 NLRB at p. 623.) Although the decision considered conduct described as entry onto private property without permission or invitation, it did not deem the conduct a trespass as a legal matter, or frame the issues as an unlawful encroachment on the employer's right of possession.[13]

Here, while there may have been some evidence adduced that *could* support a claim of employee coercion, the issue of coercion was not before the trial court. Adjudicating the trespass claim was entirely unconnected to any balancing of employee rights under the NLRA, or a policy decision about the best way to avoid or minimize industrial strife. *Sears* indicates that at least with respect to trespass claims, the trespass issue may properly be seen as distinct from violations of federal labor law arising out of the same conduct, and therefore not preempted. *District 65* further illustrates how a Section 8(b)(1)(A) charge and a trespass claim based on the same set of facts may present distinct controversies in different forums. (See *520 S. Mich. Ave Assocs. v. Unite Here Local 1* (7th Cir. 2014) 760 F.3d 708, 720-721 [in case involving allegedly unlawful

---

[13] In fact, the union in *District 65* conceded its conduct might constitute a trespass, but maintained it did not violate the NLRA. (*District 65, supra,* 157 NLRB at pp. 616-617.) The decision noted: "While most persons capable of judging, would likely consider the Union's action in the minimum conduct cases both distasteful and unwise, and possibly see in it conduct calling for either police action or a remedy for trespass, or both, whether such action violates the provisions of Section 8(b)(1)(A) of the National Labor Relations Act, as amended, is not beyond doubt." (157 NLRB at p. 622.) The decision focused on whether the organizing method was coercive within the meaning of Section 8(b)(1)(A), irrespective of whether it was also a trespass under state law.

17

secondary activity, question was whether alleged trespassory activity was coercive under federal labor law, not whether union actually committed trespass]; *Radcliffe v. Rainbow Const. Co.* (9th Circ. 2001) 254 F.3d 772, 786 (*Radcliffe*).)

### C. Shared Factual Allegations Are Not Dispositive

Moreover, shared factual allegations in the unfair labor practice charge and the complaint do not require us to conclude the controversies are identical. Indeed, the *Sears* analysis is premised on the idea that two different legal controversies may arise out of one set of facts or form of conduct. In *Sears* there was only one type of conduct at issue and one factual scenario: pickets at a Sears retail store. By picketing on Sears property, the union was trespassing. By that same picketing, the union was arguably engaged in unlawful efforts to force Sears to assign work away from its employees to the union's members, or to unlawfully coerce Sears into signing a members-only agreement with the union. (*Sears, supra,* 436 U.S. at pp. 186-187.) Under the reasoning of *Sears*, that an unfair labor practice charge and a civil complaint may be based on the same underlying conduct does not mean the charge and complaint necessarily present identical *controversies*, such that the complaint is preempted.

Likewise, before *Sears*, the high court in *Linn v. Plant Guard Workers* (1966) 383 U.S. 53 (*Linn*) and *Farmer v. Carpenters* (1977) 430 U.S. 290 (*Farmer*), held the NLRA did not preempt state actions, even though the same conduct challenged in the state action could have formed, or did form, the basis of an unfair labor practice charge. In *Linn*, an employee filed both an unfair labor practice charge and a civil suit based on a union's allegedly defamatory statements. The court reasoned the controversies were not identical because the NLRB would look only to the coercive or misleading nature of the statements and would be unconcerned with whether the statement might cause damage to the employee's reputation. In contrast, the court reasoned state remedies are "designed to compensate the victim and enable him to vindicate his reputation. The Board's lack of concern with the 'personal' injury caused by malicious libel, together with its inability to provide redress to the maligned party, vitiates the ordinary arguments for pre-emption." (*Linn*, 383 U.S. at pp. 63-64, fn. omitted.)

18

Similarly, in *Farmer*, an employee alleged his union harassed him and discriminated against him in referrals to employers after he disagreed with union officials. (*Farmer, supra,* 430 U.S. at p. 292.) Although the same basic actions could have been both the subject of the employee's intentional infliction of emotional distress claim and an unfair labor practice, the focus of the two disputes was not identical.[14] (*Id.* at pp. 301-304.) If the employee's complaints were filed with the NLRB, the focus of the unfair labor practice proceeding would be on whether union officials discriminated against him in referrals for reasons other than a failure to pay union dues. Whether the statements caused severe emotional distress or physical injury would not be a Board concern. (*Id.* at p. 304.) "Conversely, the state-court tort action can be adjudicated without resolution of the 'merits' of the underlying labor dispute . . . . The state court need not consider, much less resolve, whether a union discriminated or threatened to discriminate against an employee in terms of employment opportunities." (*Id.* at p. 304.) The NLRA would not preempt the state claims so long as the outrageous conduct challenged in the emotional distress claim was something other than merely the alleged employment discrimination. (*Id.* at p. 304.)

This case is no different. Despite the factual allegations that formed the basis of both the unfair labor practice charge and the trespass complaint, there were two non-identical controversies. The controversy presented in the state claim was the alleged unlawful interference with Walmart's property right in the form of trespass, not coercion or restraint of employee's Section 7 rights, which is an NLRA concern. As in *Sears*, allowing the trial court to adjudicate Walmart's trespass claim created "no realistic risk of interference" with the NLRB's exclusive jurisdiction to enforce the statutory prohibition against unfair labor practices. (*Sears*, *supra*, 436 U.S. at p. 198; see also *Radcliffe, supra,* 254 F.3d at pp. 786-787 [false arrest, false imprisonment, and malicious prosecution claims based on detention and prosecution of union representatives who allegedly

---

[14] In *Farmer*, before filing suit, the employee filed an unfair labor practice charge as to one specific instance of alleged discrimination by the union. The NLRB awarded him backpay. (*Farmer*, *supra*, 430 U.S. at p. 303, fn. 11.)

19

trespassed on employer property were not identical to claims of interference with representatives' Section 7 rights based on the same underlying conduct]; *Helmsley-Spear, Inc. v. Fishman* (N.Y. 2008) 11 N.Y.3d 470 [872 N.Y.S.2d 383, 900 N.E.2d 934] [pickets involved in labor dispute banged on loud drums outside building; local interest exception applied; private nuisance complaint filed in state court was not identical to the unfair labor practice charge filed which alleged impermissible picketing and coercion].)

## III.   *Jones*, *Hillhaven*, *Parker*, and the *Washington Walmart* case

We next consider several authorities the union relies upon to support its preemption argument. We conclude they do not mandate a contrary result.

### A.  *Jones*

In *Jones*, *supra,* a supervisory employee alleged the union persuaded his employer to fire him, in retaliation for his prior non-union employment. The employee first filed a charge with the NLRB, asserting the union violated Section 8(b)(1)(A) and (B). (*Jones, supra*, 460 U.S. at p. 672.) The regional director declined to issue a complaint on the charge due to insufficient evidence that the union caused the discharge or restrained or coerced the company in the selection of its representative for collective bargaining purposes. (*Id.* at pp. 672-673.) The employee then filed suit against the union and the company in state court, alleging a claim for contractual interference. (*Id.* at pp. 673-674.) The high court concluded the NLRA arguably prohibited the challenged conduct; if the union was responsible for the employee's discharge it arguably "coerced the company in the choice of its collective-bargaining representative" in violation of Section 8(b)(1)(B). (*Id.* at p. 680.) The suit was therefore preempted. (*Id.* at pp. 678-679.)

The *Jones* court stated three reasons for rejecting the employee's argument that the state claim and the unfair labor practice charge were not "sufficiently alike" to warrant preemption. (*Jones, supra*, 460 U.S. at p. 681.) First, the employee's complaint in state court alleged a union agent "intimidated and coerced" the company into breaching its contract with the employee, thus the employee was attempting to "prove a coerced discharge and breach of contract, the very claim that is concededly pre-empted." (*Id.* at p. 682.) Second, the court reasoned that permitting state claims for non-coercive

20

interference with contract would require state courts to decide whether the union's conduct was coercive, an issue of federal labor law the NLRB should resolve. Third, the court explained that even as to non-coercive interference with contract, "a fundamental part of such a claim is that the Union actually caused the discharge and hence was responsible for the employer's breach of contract. Of course, this same crucial element must be proved to make out a § 8(b)(1)(B) case: the discharge must be shown to be the result of Union influence." (*Id.* at p. 682.) Thus, even in the employee's view of the elements of the state law claim, the federal and state claims were "the same in a fundamental respect," and the NLRB regional director had already concluded the union was not at fault. (*Ibid.*)

The *Jones* court distinguished *Sears*, reasoning that in *Sears* the state trespass action "challenged only the location of the Union picketing," while the unfair labor practice charge would have focused on the objectives of the picketing, "issues 'completely unrelated to the simple question whether a trespass had occurred.' [Citation.]" (*Jones*, *supra*, 460 U.S. at pp. 682-683.) As a result, there was no "'realistic risk of interference'" with the NLRB's primary jurisdiction. But in *Jones*, the issue of causation – already determined by the NLRB regional director – was at the core of any unfair labor practice case and the employee sought to relitigate the same issue in state court. "The risk of interference with the Board's jurisdiction [was] thus obvious and substantial." (*Id.* at p. 683.)

The union interprets *Jones* as concluding the identical nature of the matters was demonstrated in part by the employee's use of the same language in the NLRB charge and the lawsuit. But it was not the fact of repeated language that demonstrated the identical nature of the two matters, it was the import of that language. The court noted the employee's state court complaint alleged a union agent had "'intimidated and coerced'" the employer. Intimidation and coercion were key elements of a claim under Section 8(b)(1)(B) *and* they factored into the employee's theory of liability on his common law claims. (*Lumber Prod. Indus. v. W. Coast Indus. Rel.* (9th Cir. 1985) 775 F.2d 1042, 1048 [*Jones* stands for the proposition that if a "crucial element of a state

21

court action is identical to an element of an unfair labor practice that is arguably covered by the NLRA, then the state action is preempted."].)

In this case, the crucial element of Walmart's unfair labor practice claim was whether the union's activities restrained or coerced Walmart employees' exercise of their Section 7 rights. This critical element was completely absent from the trespass action. To establish trespass, Walmart only had to prove the demonstrations occurred in the places alleged, not that the demonstrations had, or were reasonably calculated to have, any particular effect on employees or anyone else. Thus, unlike the issues in *Jones* which were preempted, the issues presented here were not the same in a fundamental respect. (Compare *Henry v. Intercontinental Radio, Inc.* (1984) 155 Cal.App.3d 707, 715 [issues were identical and claim preempted where employee alleged he was terminated in retaliation for union activities that could not be separated from other alleged improper reasons] with *Balog v. LRJV, Inc.* (1988) 204 Cal.App.3d 1295, 1304, 1307-1308 [no preemption where employee alleged five distinct reasons for his alleged wrongful termination, only one of which was an unfair labor practice under the NLRA].)

In *Jones,* the court ultimately concluded the employee's central complaint was of more than peripheral concern to federal labor policy. All of the *Jones* employee's claims concerned the employer-employee-union relationship, such that litigating aspects of that relationship risked significant interference with federal labor policy. Here, the state court action addresses issues only peripherally related to federal labor policy, namely the alleged interference with the property rights of a retail operation, unconnected to any employer-employee-union relationship. Further, in *Jones,* prior high court authorities foreclosed the argument that the employee's state court action raised an issue deeply rooted in local law, thus warranting a departure from *Garmon* preemption. (*Jones, supra*, 460 U.S. at p. 684.) In contrast, here we are guided by *Sears*, in which the court concluded an employer's action against a union for peaceful, but arguably prohibited, trespass *is* so deeply rooted in local law that the state's interest in enforcing its law may override the potential interference with federal labor law prosecution of the state action could entail.

22

Walmart's unfair labor practice charge and the civil complaint described the same union activities. But the civil complaint did not allege relief was warranted because the union's activities coerced or restrained Walmart employees in the exercise of their Section 7 rights. Walmart's trespass claim did not call upon the trial court to determine whether the union's action had any coercive or restraining effect on Walmart employees. Even if proven in the trial court, the trespass would not necessarily constitute a violation of Section 8(b)(1)(A). Unlike the *Jones* court, we are unable to meaningfully distinguish this case from *Sears*.

### B. *Hillhaven*

*Hillhaven, supra,* is also distinguishable in significant respects. In *Hillhaven*, the union and a corporation operating a nursing home were in the process of negotiating a collective bargaining agreement in advance of the expiration of an existing agreement. On one occasion during the negotiations, 25 to 30 union representatives entered the nursing home and distributed flyers to employees, nursing home residents, and their families. The representatives moved throughout the facility, engaging in meetings with employees. Corporation witnesses described the meetings as noisy and disruptive. (*Hillhaven, supra,* 41 Cal.App.4th. at p. 850.) The union representative groups allegedly blocked and clogged hallways, took pictures of staff and residents, and upset and disturbed residents. (*Id.* at pp. 850-851.) The corporation sought and received a temporary restraining order and, subsequently, a preliminary injunction. The injunction limited the number of union representatives allowed to enter the facility. It also set time, place, and manner restrictions on the representatives' interactions with employees both inside and outside of the facility. (*Id.* at p. 849.) The union appealed.

Meanwhile, after issuance of the temporary restraining order, but before the hearing on the preliminary injunction, the corporation filed an unfair labor practice charge with the NLRB. The NLRB regional office investigated, determined the charge had merit, and issued a complaint against the union. The charge was then settled. (*Hillhaven, supra,* 41 Cal.App.4th at pp. 852-853.)

In the appeal of the preliminary injunction, the appellate court held the NLRA preempted the state court action. The court acknowledged *Sears* "expanded the local interest exception to a case involving peaceful, nonobstructive picketing on an employer's private property." (*Hillhaven, supra,* 41 Cal.App.4th at p. 855.) Yet it found the issues the corporation raised in the state court action and in the unfair labor practice proceeding, while not identical, had "considerable overlap." (*Id.* at p. 858.) The corporation's complaint alleged the union's conduct was "intended to 'threaten, intimidate, coerce and put in fear' Hillhaven's employees and others," an issue critical to an unfair labor practice charge. (*Ibid.*) Conversely, the company argued to the NLRB that the Section 8 violation occurred because the union's conduct inside the facility "'disrupted the Employer's work place and interfered with the Employer's care and treatment of its patients,'" an issue highly relevant to the civil claim. (*Ibid.,* italics omitted.)

The *Hillhaven* court's conclusion relied not only on the overlapping allegations, but also the fact that the NLRB had actually exercised jurisdiction over the company's claims. The court explained:

"In theory, simultaneous jurisdiction of the NLRB and state court is possible for conduct arguably *prohibited* under the NLRA. Indeed, the local interest exception is founded upon a recognition that certain conduct can be the basis for state court action even though the same conduct might constitute an unfair labor practice under the NLRA. [Citation.] However, no case cited by the parties or found by us has failed to find preemption where not only has the NRLB actually exercised jurisdiction but the regional director of the NLRB has responded by issuing a complaint and noticing a hearing. [¶] Where the NLRB has exercised its jurisdiction, as here, there is a real and substantial opportunity for conflict. . . . Furthermore, although the issues presented to the NLRB and the superior court are not 'identical' [citation], neither are they 'completely unrelated.' [Citations.] To the extent both actions involve allegations of coercion and intimidation of employees, there is a core identity of issues presented to the labor board and the court, making conflict even more likely." (*Hillhaven, supra,* 41 Cal.App.4th at pp. 859-860, fns. omitted.)

Another factor in the decision was the existence of a collective bargaining agreement that governed the right of the union representatives to be on the nursing home premises. As a result of that agreement, "[q]uestions involving the alleged trespass, the

24

number of union representatives allowed to enter the facility, and where those representatives were permitted access would appear to be issues turning upon interpretation of the bargaining agreement in the first instance." (*Hillhaven, supra,* 41Cal.App.4th at p. 861.) The court also noted the trial court's injunctive relief was in conflict with the terms of the NLRB settlement of the unfair labor practice charge. (*Id.* at p. 861, fn. 13.)

*Hillhaven* was thus distinguishable from *Sears* in significant aspects. In *Sears*, the idea of a concurrently filed unfair labor practice charge was only hypothetical; in *Hillhaven*, a charge was actually filed and the NLRB investigated and acted on the charge. In *Sears*, the court appeared to envision an unfair labor practice claim based on the same underlying conduct but with entirely different legal issues from the state trespass claims; in *Hillhaven*, the unfair labor practice charge and trial court claims overlapped such that the state court claims referred to coercion and intimidation of employees (a NLRA concern), and the unfair labor practice charge referred to disrupting the workplace and interference with patient care (not necessarily an NLRA concern). In *Sears*, whether the pickets had a right to be on the Sears property was governed only by state law, or federal labor law only to the extent it arguably protected the location of the picketing. In *Hillhaven*, the parties had an existing collective bargaining agreement that governed the union's right to be present on the property.

In the end, the factors that distinguished *Hillhaven* from *Sears* are not present in this case, persuading us that it is the *Sears* reasoning that controls here. In *Hillhaven*, the issues surrounding the trespass were related to the interpretation of an existing collective bargaining agreement, and the union actually represented employees at the facility. In this case, the union was not the bargaining representative of Walmart employees at the stores where the demonstrations took place and there was no collective bargaining agreement. The trial court's resolution of the trespass claim would not touch on any collective bargaining issues which are a central concern of the NLRA and federal labor law. In addition, while Walmart's unfair labor practice charge referred to "trespassory" in-store demonstrations, the complaint did not allege coercion or intimidation as part of

the trespass claim. Further, in *Hillhaven*, the filing and pursuit of the unfair labor practice charge set the stage for an actual conflict between forums. There is no indication such a conflict existed here. An unfair labor practice charge was filed, yet the record does not indicate the NLRB exercised its jurisdiction, investigated the charge, or issued a complaint on the charge. The *Hillhaven* reasoning finding preemption does not mandate the same result here.

### C. *Parker* and Automatic Preemption

We also find the reasoning of *Parker v. Connors Steel Co.* (11th Cir. 1988) 855 F.2d 1510 (*Parker*), inapplicable to this case. In *Parker*, a dispute arose following a plant closure that occurred despite negotiations between the union and the employer that had resulted in union concessions. (*Id.* at p. 1514.) Plant employees filed unfair labor practice charges with the NLRB alleging the company bargained in bad faith in violation of the NLRA, and the union violated its duty of fair representation under the NLRA. The NLRB investigated and found the charges to be untimely filed. The NLRB General Counsel denied the employees' appeal. (*Id.* at pp. 1514-1515.) The employees then filed suit in state court. The claims against the employer included fraud and bad faith based on allegations related to the company's negotiations with the union and its actions in inducing employees to ratify the concession agreements. (*Id.* at p. 1515.)

The court of appeals considered whether the NLRA preempted the fraud claims. The court noted the case was "unique" because the employees were seeking relief for claims that had already been presented to the NLRB as unfair labor practices, and the NLRB had dismissed the charges.[15] The employees claimed the company breached its duty to bargain in good faith, a type of claim "to which the *Garmon* preemption doctrine was intended to apply." (*Parker, supra,* 855 F.2d at pp. 1516-1517.) The court additionally reasoned the "primary jurisdiction doctrine" required preemption. The court explained: "[T]he employees, through artful drafting, have recast the same claims and

---

[15] The claims were also the subject of an arbitration proceeding. The employees received only a partial award. (*Parker, supra,* 855 F.2d at p. 1515.)

26

factual allegations into state law claims," and "the primary jurisdiction rationale has the greatest validity when a party has sought redress for his claims from the NRLB and in the face of an adverse decision the claims are restructured as state law claims and pursued in state court . . . . By initially pursuing relief with the NLRB the employees have implicitly recognized the Board's jurisdiction over their claims." (*Id.* at p. 1517.) The court then determined the local interest exception to preemption did not apply because the substance of the controversies was the same. Further, good faith bargaining is a "core concern" of the NLRA, rather than a peripheral one. (*Id.* at pp. 1517-1518.) The employees' suit was preempted.

We note *Sears* also discussed the primary jurisdiction doctrine. The court invoked the doctrine as a way to analyze whether the arguably *protected* nature of the trespassory picketing in the case mandated preemption.[16] The court did not invoke the primary jurisdiction doctrine to determine whether the state claim based on arguably prohibited conduct was preempted. To the extent *Sears* suggested filing an unfair labor practice charge is relevant to a preemption determination because of primary jurisdiction issues, the suggestion was in the context of arguably protected conduct. Indeed, the *Sears* court expressly noted: "[T]he primary jurisdiction rationale of *Garmon* did not require pre-emption of state jurisdiction over the Union's picketing insofar as it may have been prohibited by § 8, since the controversy presented to the state court was not the same controversy which Sears could have presented to the Board. In deciding the state-law issue, the Court had no occasion to interpret or enforce the prohibitions in § 8 of the federal Act; in deciding the unfair labor practice question, the Board's sole concern

---

**16**      In discussing preemption of claims challenging arguably *protected* conduct, the Court reasoned: "The primary-jurisdiction rationale justifies preemption only in situations in which an aggrieved party has a reasonable opportunity either to invoke the Board's jurisdiction himself or else to induce his adversary to do so. . . . The primary-jurisdiction rationale unquestionably requires that when the same controversy may be presented to the state court or the NLRB, it must be presented to the Board. But that rationale does not extend to cases in which an employer has no acceptable method of invoking, or inducing the Union to invoke, the jurisdiction of the Board." (*Sears*, *supra*, 436 U.S. at pp. 201-202, fn. omitted.)

27

would have been the objective, not the location, of the challenged picketing." (*Sears, supra,* 436 U.S. at p. 201, fn. 31.)

In *Parker*, the court concluded the controversy presented to the state court was the same as that presented to the NLRB, thus the primary jurisdiction doctrine required preemption. But here, the controversy presented to the court was not the same as the controversy initially presented to the NLRB, and we are concerned only with arguably prohibited conduct. The primary jurisdiction doctrine invoked in *Sears* with respect to arguably protected conduct is inapplicable. To the extent the union relies on *Parker* to argue the act of filing the unfair labor practice charge itself triggered preemption, we find the case is also distinguishable due to the stage of the NLRB proceedings. In *Parker*, the employees' unfair labor practice charges were investigated, dismissed, and appealed, all before the state court action was filed. In this case, we have no indication that any action was taken on Walmart's unfair labor practice charge before the trespass-based allegations were withdrawn. We therefore are not persuaded that the *Parker* analysis regarding preemption based on the filing of an unfair labor practice charge requires preemption in this case.

Indeed, the union provides no authority for the proposition that filing a charge, then withdrawing it before any NLRB action is taken, triggers an automatic preemption, regardless of whether the charge and a subsequent state claim present identical controversies. In *Sears*, no unfair labor practice charge was filed, but the court reasoned if Sears *had* filed a charge, the federal labor law issue would have been unrelated to the question of whether a trespass occurred. In several other cases, although a charge was filed, courts have conducted a full preemption analysis without including as a factor the prior filing of a charge with the NLRB. (See *Jones, supra,* 460 U.S. at pp. 672-673; *Linn*, *supra,* 383 U.S. at pp. 56-57; *Farmer, supra,* 430 U.S. at p. 303, fn. 11.) Additionally, in cases such as *Hillhaven*, *Parker*, and *Davis Supermarkets, Inc. v. NLRB* (D.C. Cir. 1993) 2 F.3d 1162, 1178-1179 (*Davis*), the NLRB took action on an unfair labor practice charge, such as investigating, issuing a complaint, or refusing to issue a complaint.

28

In another case the union cites to support its argument, *Volentine v. Bechtel, Inc.* (E.D. Tex. 1998) 27 F.Supp.2d 728 (*Volentine*), the court in fact rejected the argument that preemption was automatically required because of previously-filed unfair labor practice charges with the NLRB. The NLRB investigated the charges in the case but refused to issue a complaint. (*Id.* at p. 733.) The *Volentine* court acknowledged *Parker* and *Davis* found a "suggestion" in *Sears* that the act of filing a charge with the NLRB may be sufficient in itself to trigger preemption. (*Volentine,* at p. 733; see *Davis, supra,* 2 F.3d at pp. 1178-1179 [maintaining a trespass lawsuit against union was an unfair labor practice because the suit was preempted; preemption was triggered by the issuance of a complaint by the NLRB's General Counsel, "if not earlier."].) Yet, the *Volentine* court *declined* to find preemption was automatically required on this ground.[17] The court instead conducted an "identical controversy" analysis and concluded the state court action was preempted on that basis.

Walmart's filing of an unfair labor practice charge did not necessitate a finding of preemption in this case since the controversies presented by the section 8(b)(1)(A) charge and the trespass action were not identical, and there is no indication the NRLB took any action on the charge (or the portion of the charge at issue here).[18]

---

[17] The court reasoned: "Although this Court respects the analysis of its sister circuits, it will not throw out a case on a mere 'suggestion' of law – particularly when its own circuit has been silent on this possible 'suggestion.'" (*Volentine, supra,* 27 F.Supp.2d at pp. 733-734.)

[18] As a result, even if Walmart's act of filing the charge based in part on the trespassory incidents was a concession that the NLRA arguably or actually prohibited some aspect of the union's conduct, we reject the union's contention that it was also a concession that the NLRA preempted any and all legal controversies based on that conduct.

29

**D.** *Wal-Mart Stores, Inc. v. United Food and Commercial Workers International Union* (**Washington State case**)

We further respectfully disagree with the Washington Court of Appeals decision reaching the opposite result in a case Walmart brought against the union in that state, based on the same type of union demonstrations challenged in the instant action. The Washington court concluded that unlike *Sears*, Walmart challenged not just the location of the demonstrations, but the demonstrations themselves; specifically the union's conduct in trespassing by entering Walmart stores without an intent to shop. (*Walmart Stores, supra,* 354 P.3d at p. 36.) The Washington court found the conduct Walmart challenged in the NLRB charge was "substantially identical" to the conduct challenged in state court. (*Ibid.*)

However, as explained above, in our view, Walmart's complaint in this case is about the location of the demonstrations rather than demonstrations themselves in the same way *Sears* was about the location of the picketing rather than the picketing itself. Walmart did not allege or attempt to prove the demonstrations were unlawful for any reason other than that they were occurring inside its stores. Consistent with the scope of the claim, the trial court injunction in this case did not prohibit the demonstrations irrespective of location. The order only barred the demonstrations from taking place inside Walmart stores.

The Washington court also concluded the case before it was unlike *Sears* because Walmart had legal recourse in NLRB charges that were filed and could be refiled. (*Walmart Stores, supra,* 354 P.3d at p. 36.) We disagree that the availability of relief to Walmart through the NLRB process is a factor in the preemption determination as to claims challenging conduct the NLRA arguably prohibits. In *Sears*, the availability of a remedy was critical to the high court's analysis of preemption of claims based on arguably protected conduct. (*Sears, supra*, 436 U.S. at pp. 201-203.) Here, the union's only claim is that preemption is required because the union's conduct is arguably *prohibited*. In discussing the arguably prohibited conduct challenged in *Sears*, the high court did not determine the state trespass claim was not preempted because Sears had no

alternative remedy in the NLRB. To the contrary, the *Sears* court's analysis was that if Sears *had* filed an unfair labor practice charge, the issue presented to the NLRB would have been different from the issue presented to the state court. (*Sears, supra,* 436 U.S. at p. 186.) Further, as in *Kaplan's*, the issue presented to the NLRB is necessarily narrower than the issue presented in the trial court. The NLRB proceeding would concern trespass only to the extent it caused an interference with Walmart employees' Section 7 rights, not the trespass as an independently unlawful act. As a result, an injunction obtained through an NLRB proceeding barring only unfair labor practices might not provide Walmart with the full relief to which it would be entitled in a trespass action. (*Kaplan's*, *supra*, 26 Cal.3d at p. 74.) That Walmart has a potential NLRB remedy available to it does not necessarily mean the trespass claim is preempted.

Finally, the Washington court concluded the local interest exception did not apply because the union's activities were not violent, intentional torts, or threats of violence. (*Walmart Stores, supra,* 354 P.3d at p. 37.) The court also noted no court in that state had "expressly ruled on whether trespass is a matter of deeply rooted local interest." (*Id.* at p. 37.) In this state, however, courts, including the California Supreme Court, have identified trespass as a matter that generally may be of "local concern," or "deeply rooted in local feeling," usually with a citation or reference to *Sears.* (See *City of San Jose v. Operating Engineers Local Union No. 3* (2010) 49 Cal.4th 597, 608, italics added ["The local concern doctrine has generally been applied in cases where it was necessary to 'maintain[] civil order by deterring and punishing violence and other intentional torts, including defamation, *trespass*, and infliction of emotional distress.' [Citation.]"; *Inter-Modal Rail Employees Assn v. Burlington Northern & Santa Fe Ry. Co., supra,* 73 Cal.App.4th at p. 925; *Hillhaven, supra,* 41 Cal.App.4th at p. 854 [*Sears* expanded the local interest exception to peaceful trespass].) We understand *Sears* as concluding even peaceful trespass may be a matter "deeply rooted in local feeling," rendering it necessary to apply the "identical controversy" test to determine whether the exception should apply to avoid preemption of claims involving "arguably prohibited" conduct.

## IV. Conclusion

As the Ninth Circuit Court of Appeals has put it, "trespass and nuisance are labor-neutral torts, far afield indeed from areas of state law, such as antitrust, that most commonly raise preemption concerns. Instead of directly regulating relations between unions and employers, trespass and nuisance law instead largely touch on noneconomic 'interests . . . deeply rooted in local feeling and responsibility.' [Citations.] . . . . [W]e ought not be quick to 'infer that Congress ha[s] deprived the States of the power to act' with respect to such local interests. [Citations.] . . . . '[T]he federal law governing labor relations does not withdraw "from the States . . . power to regulate where the activity regulated [is] merely a peripheral concern of"'" federal labor law. (*Retail Property, supra,* 768 F.3d at p. 960.) *Sears* indicates claims challenging peaceful trespass in the context of a labor dispute are not necessarily preempted. *Sears* treated trespass as a form of conduct touching interests so deeply rooted in local feeling that the court Could not infer Congress intended to preempt such claims under the NLRA. This is a trespass case.

*Sears* further indicates that when a dispute involves conduct that is arguably prohibited under the NLRA and also constitutes trespass under state law, the NLRA will not preempt the state trespass claim so long as it concerns the location of union conduct, rather than the objective, purpose, or effect of the conduct. The union does not argue the in-store demonstrations are protected under the NLRA, only that the NLRA arguably prohibits the union's conduct. This trespass case, like *Sears*, turned on the location of the union's conduct, rather than its objective, purpose, or effect. The trial court was not called upon to consider whether the challenged conduct was coercive and interfered with Walmart employees' Section 7 rights, the issue presented in the Section 8(b)(1)(A) unfair labor practice charge. Moreover, unlike some cases that have distinguished *Sears*, no other circumstances, such as NLRB investigation or action on the unfair labor practice charge, created the risk of actual interference with NLRB jurisdiction. The in-store demonstrations are the only conduct the trial court's injunction prohibits. The *Sears* court's conclusion is therefore equally applicable here: "The reasons why pre-emption of state jurisdiction is normally appropriate when union activity is arguably prohibited by

federal law plainly do not apply to this situation; they therefore are insufficient to preclude a State from exercising jurisdiction limited to the trespassory aspects of that activity." (*Sears*, *supra*, 436 U.S. at p. 198.)

## DISPOSITION

The trial court judgment is affirmed. Respondents to recover their costs on appeal.

**CERTIFIED FOR PUBLICATION**


BIGELOW, P.J.

We concur:


FLIER, J.


KRIEGLER, J.*

---

\*      Associate Justice of the Court of Appeal, Second Appellate District, Division Five, assigned to Division Eight by the Chief Justice pursuant to article VI, section 6 of the California Constitution.