Filed 9/4/25  Smart & Final Logistics v. Teamsters Local 630 CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SMART & FINAL LOGISTICS LLC, | |
| Plaintiff and Respondent, | G064544 |
| v. | (Super. Ct. No. CVRI2306292) |
| TEAMSTERS LOCAL 630, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Riverside County, Eric A. Keen, Judge. Affirmed.

Bush Gottlieb, Julie Gutman Dickinson, Jason Wojciechowski and Luke Taylor for Defendant and Appellant.

Goodwin Procter, Matthew P. Kanny, Andrew Kim and Allyson M. McCain for Plaintiff and Respondent.

In 2024, the trial court issued a preliminary injunction enjoining defendant Teamsters Local 630 (Union), and those acting in concert with it, from, inter alia, (1) blocking ingress to and egress from the entrance of a distribution center owned by plaintiff Smart & Final Logistics LLC (Smart & Final); and (2) engaging in violent acts or threatening violence against, or causing property damage to Smart & Final, its employees or its business partners.

The Union challenges the order issuing the preliminary injunction, arguing insufficient evidence supports the court's statutorily required findings there existed a threat of unlawful future conduct that will be committed unless restrained (Lab. Code, § 1138.1, subd. (a)(1)); police officers were unable or unwilling to furnish adequate protection (*id.*, § 1138.1, subd. (a)(5)); and Smart & Final made every reasonable effort to settle the parties' dispute (*id.*, § 1138.2).[1] The Union also argues the National Labor Relations Board (NLRB) has exclusive jurisdiction over the matter and therefore the trial court lacked jurisdiction to issue the preliminary injunction in the first place.

For the reasons we explain, we reject the Union's arguments and affirm.

FACTS

Smart & Final operates a distribution center in Riverside, California (the Facility). The Union is a labor organization which represents a section of Smart & Final employees and has been in contract negotiations with Smart & Final in connection with a labor dispute since July 26, 2023.

_____

[1] All further code references are to the Labor Code unless otherwise specified.

2

From July to November 2023, Smart & Final met with the Union on seven different days to negotiate a contract. They did not reach an agreement.[2]

In the early morning of November 1, 2023, the Union began a strike at which time employees and members of the Union, a Union officer, and others started picketing the Facility. "The Union and its members were positioned in the cul-de-sac in front of the driveway entrance to the Facility and generally walked back and forth in front of the entrance to the Facility to picket"; that was the Facility's single point of access, ingress, and egress. Dozens of picketers formed a human barricade preventing trucks and cars from entering or leaving the Facility.

On November 1, 2023, Smart & Final's counsel sent an e-mail to the Union asking it to "cease and desist from blocking, obstructing, and or delaying vehicular or pedestrian ingress and egress to the Commerce and Riverside distribution centers immediately" and to "not reinitiate or continue any such conduct in the future." On November 2, 2023, the Union received another e-mail from Smart & Final's counsel which attached the November 1 e-mail. Neither the Union nor its counsel or anyone affiliated with the Union responded to either e-mail.

Smart & Final vice-president Sue Mullins sent a letter dated November 3, 2023 to the chief of police of the Riverside Police Department in which Mullins described the Union's activities at the Facility. She concluded her letter by stating: "Please act. Please direct the Riverside Police Department to stop—and keep stopped—the [U]nion's blatant violation of the

---

[2] Smart & Final and the Union thereafter met 15 additional days before the issuance of the instant preliminary injunction, but they remained unable to reach agreement.

3

law. Stop the blocking. Stop the false imprisonment of our employees and your constituents. Stop the interruption of food to our communities."

On November 6, 2023, the assistant city attorney responded to Mullins by sending a letter stating the Riverside Police Department was not responsible for taking action to stop the picketing and that if Smart & Final believed the Union's actions were unlawful, it should consult with legal counsel "for assistance with potential civil remedies that may be available through the appropriate court as the police are not the proper forum for adjudicating labor disputes." The police did not thereafter instruct the Union to stop the conduct Smart & Final considered to be unlawful blocking activity.

On November 17, 2023, Smart & Final's counsel sent an e-mail to the Union's counsel and others stating in part: "The Union's blocking activity must immediately and permanently stop. Its violence and threats of violence against Smart & Final employees and business affiliates must also immediately and permanently stop. We need written assurance from the Union that the Union's (including its allies, affiliates, and supporters under its control, direction, or influence) continued misconduct as described herein will permanently end. Thus, by no later than 3:00 [p.m.] PT on Monday, November 20, 2023, we hereby demand that the Union agree, in writing via e[-]mail . . . that it will cease and desist from and permanently stop and not resume its blocking activity and other unlawful conduct described above at the Facilities . . . . Absent such written confirmation at that date/time, [Smart & Final] will take appropriate action." (Boldface and underscoring omitted.)

4

The following day, the Union responded, denying it had engaged in unlawful conduct and demanding that Smart & Final immediately return all striking workers to their jobs without condition.

The picketing activity occurred around the clock every day from November 1, 2023 until November 17, 2023. The Union not only blocked the Facility's sole point of access, ingress, and egress during that time, but its activity involved violent acts, threats of violence, and damage to property.

PROCEDURAL HISTORY

I.

THE COMPLAINT

In November 2023, Smart & Final filed a verified complaint for a preliminary and permanent injunction, declaratory relief, and damages. The complaint contained claims for private nuisance, public nuisance, intentional interference with prospective economic relations, preliminary and permanent injunctive relief, and declaratory relief.

II.

SMART & FINAL FILES THE MOTION FOR A PRELIMINARY INJUNCTION

Shortly after filing the complaint, on November 27, 2023, Smart & Final filed a motion for a preliminary injunction in which it sought an order enjoining the Union from, directly or indirectly, engaging or participating in conduct consisting of: (1) blocking ingress to, egress from, and access to the Facility; (2) obstructing the free passage of individuals or vehicles entering and leaving the Facility, including on the public street in front of the Facility; (3) engaging in violent acts or threats of violence against Smart & Final, its employees, or business partners; (4) causing property damage to Smart & Final, its employees, or business partners; and

5

(5) committing any other unlawful and disruptive acts the court deemed appropriate.

Smart & Final argued the trial court should grant the motion for a preliminary injunction because the Union's allegedly unlawful actions were not protected by any state or federal law and Smart & Final will prevail on the merits of its claims. Smart & Final contended it met all statutory requirements under sections 1138.1 and 1138.2 which must be met for an injunction to issue in a case involving activities arising out of a labor dispute.

The Union opposed the motion, arguing Smart & Final failed to satisfy the requirements of sections 1138.1 and 1138.2 and an injunction should otherwise be barred because Smart & Final had unclean hands for condoning the violence of its non-striking employees.

III.

THE TRIAL COURT GRANTS THE MOTION FOR A PRELIMINARY INJUNCTION

Based on the evidence submitted by the parties, which included live testimony presented on March 22 and 29, 2024, the trial court adopted its written tentative ruling as its final ruling granting the motion for a preliminary injunction (final ruling).[3] The court also issued a second amended findings of fact and order in which it made additional findings of fact, including that the Union, its officers, agents, employees, representatives, organizers, and members "conducted unlawful blocking of the Facility's sole point of access, ingress, and egress between November 1 and November 17, 2023 while the Facility was the site of an active labor dispute, as well as other unlawful conduct, including engaging in violent acts,

---

[3] The trial court ruled on evidentiary objections asserted by the parties, none of which are at issue in this appeal.

threats of violence, and property damage against [Smart & Final], its employees, and its business partners."

In addition, the court found: (1) the Union and its officers, agents, employees, representatives, organizers, and members "have committed and continue to threaten unlawful acts at the Facility, including, but not limited to, blocking access to, ingress to, and egress from the Facility"; (2) the Union's conduct has caused Smart & Final irreparable harm and will continue to cause harm; (3) Smart & Final will suffer greater injury if an injunction is not granted than will be inflicted on the Union by granting such relief; (4) Smart & Final has no adequate remedy at law; (5) public officers have been unable or unwilling to furnish adequate protection; and (6) Smart & Final "has made every reasonable effort to settle its legally cognizable labor dispute . . . with the Union."

The court issued the following preliminary injunction: "[The Union, its] officers, agents, employees, representatives, organizers, members, and all persons acting in concert with it, . . . directly or indirectly, ARE HEREBY ENJOINED FROM (1) blocking of the ingress to, egress from, and access to the Facility; (2) obstructing the free passage of individuals or vehicles coming and going from the Facility, including on the public street to and in front of the Facility; (3) engaging in violent acts or threats of violence against [Smart & Final], its employees, or business partners; and (4) causing property damage to [Smart & Final], its employees, or business partners." The Union appealed.

DISCUSSION

I.

GOVERNING STANDARDS OF REVIEW

A preliminary injunction is an appealable order we review for abuse of discretion. (Code of Civ. Proc., § 904.1, subd. (a)(6); *Oiye v. Fox* (2012) 211 Cal.App.4th 1036, 1060.) "In applying this standard, we review the record as a whole and accept all evidence supporting the order. We disregard contrary evidence, we draw inferences in favor of the order, and we do not reweigh evidence." (*Loy v. Kenney* (2022) 85 Cal.App.5th 403, 406.)

"'[T]he specific determinations underlying the superior court's decision [whether to issue a preliminary injunction] are subject to appellate scrutiny under the standard of review appropriate to that type of determination. [Citation.] For instance, the superior court's express and implied findings of fact are accepted by appellate courts if supported by substantial evidence, and the superior court's conclusions on issues of pure law are subject to independent review.'" (*ITV Gurney Holding Inc. v. Gurney* (2017) 18 Cal.App.5th 22, 29.) We review whether a claim is preempted de novo. (*Palomar Health v. National Nurses United* (2023) 97 Cal.App.5th 1189, 1201.)

II.

SUBSTANTIAL EVIDENCE SUPPORTS THE FINDINGS SECTIONS 1138.1, SUBDIVISION (a)(1) AND (5) AND 1138.2 HAVE BEEN SATISFIED

The Union argues the order issuing the preliminary injunction must be reversed because insufficient evidence supports the court's findings required under sections 1138.1, subdivision (a)(1) and (5) and 1138.2. "Enacted by the California Legislature in 1999 (Stats. 1999, ch. 616, § 1, pp. 4343–4345), section 1138.1 was patterned after section 107 of title 29 of the

United States Code; the federal provision is part of the federal Norris-LaGuardia Act." (*Ralphs Grocery Co. v. United Food & Commercial Workers Union Local 8* (2012) 55 Cal.4th 1083, 1094–1095.) Section 1138.1, subdivision (a) provides in relevant part:

"No court of this state shall have authority to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute . . . except after findings of fact by the court, of all of the following:

"(1) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorized those acts.

"[¶] . . . [¶]

"(5) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection."

Enacted at the same time as section 1138.1, section 1138.2 provides: "No restraining order or injunctive relief shall be granted to any complainant involved in the labor dispute in question who has failed to comply with any obligation imposed by law, or who has failed to make every reasonable effort to settle that dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration."

*A. Substantial Evidence Shows a Threat of Future Conduct that Will Be Committed*

In its second amended findings of fact, the trial court found the requirement of section 1138.1, subdivision (a)(1) satisfied, stating: "Defendants and their officers, agents, employees, representatives, organizers, and members have committed and continue to threaten unlawful acts at the Facility, including, but not limited to, blocking access to, ingress to, and egress from the Facility." The trial court explained the basis for its finding the Union has committed unlawful acts in the final ruling as follows:

"[Smart & Final] demonstrates by multiple declarations and photographs that, between the period of November 1 and November 17, 2023, picketers have continually blocked vehicle traffic both day and night, which substantially interfered with the only access for ingress and egress to its property. [Citations.] The declarations submitted by [Smart & Final] demonstrate that [the Union] and [U]nion picketers disrupted the flow of traffic in and out of [Smart & Final]'s distribution center through the use of human blockade and traffic cones and engaged in hostile conduct[] such as yelling profanities.

"For instance, Robert J. Casciani, [Smart & Final]'s operations manager, represents in his declaration . . . that, from November 1, 2023 until November 17, 2023, during his shift lasting from 4:00 p.m. to 1:30 a.m., he observed 20–40 [U]nion picketers continuously engaged in blocking the entrance and exit to the facility from the public road. [Citation.] He also represents that he has experienced picketers surrounding his vehicle, not allowing him to enter the facility with his vehicle. [Citation.] Casciani, also represents in his declaration that he observed picketers, and the union Secretary Treasurer, Lou Villalvazo, yelling profanities, and also observed

police officers on the scene who did not stop the blocking activity and the yelling of violent profanities. [Citation.] Also, Darius Davis, [Smart & Final]'s human resources manager, represents in his declaration [citation] that he, too, has also personally observed picketers outside of the facility, and that he has received approximately 31 different reports from nonstriking employees complaining about the picketers for the blocking activities and verbal insults. [Citation.] [Smart & Final] also submits the declaration of Mark Flores, [Smart & Final]'s regional manager of loss prevention, who also represents that he has been on site each day from November 1, 2023 through November 17, 2023, from 8:00 a.m. to 8:00 p.m., and personally observed behaviors by picketers, including, Mr. Villalvazo, the [U]nion secretary and treasurer, and Oscar Ruiz, the [U]nion coordinator, engage in various hostile behaviors such as yelling profanities. He also observed a picketer swinging a picket sign at an employee attempting to enter the facility, and picketers blocking a delivery truck, and several portable canopies and toilets installed on the public sidewalk near the facility. [Citation.] He also states he is responsible for assisting human resources in any investigations and represents that some of the hostile behaviors by the [U]nion picketers have been captured by video which [Smart & Final] also submits into evidence. [Citation.] Flores also states that he never observed the police stopping the blocking activity of the picketers."

In addition, the trial court also cited evidence "picketers would sometimes chant profanities such as 'fuck around and find out,'" and "may have splashed some liquid on the car hood of a vehicle trying to pass through." The court deemed this activity unlawful as "conduct consisting of blocking ingress and egress to property . . . not protected under Code of Civil

11

Procedure section 527.3, which prohibits enjoining peaceful picketing or assemblies."

The Union does not challenge any of the above-cited evidence or the court's conclusion that unlawful acts have been committed by the picketers. Instead, the Union contends insufficient evidence shows any unlawful acts "*will* be continued unless restrained" within the meaning of section 1138.1, subdivision (a)(1). (Italics added.) In the final ruling, the trial court addressed this issue. Accurately citing trial evidence Smart & Final had twice sent to the Union cease and desist notices, the court noted that in the Union's secretary-treasurer's response to Smart & Final, he "refused to provide assurance to [Smart & Final]'s request to cease and desist but rather refuted [Smart & Final]'s characterization of the [U]nion's activities as unlawful conduct." In addition, as noted by the court, "[t]o date, the parties ha[d] not reached an agreement to resolve the ongoing labor dispute."

The trial court's findings the Union committed unlawful acts and that it will continue such unlawful conduct unless restrained is therefore supported by substantial evidence.

*B. Substantial Evidence Shows Law Enforcement Was Unable or Unwilling to Act*

In interpreting subdivision (a)(5) of section 1138.1, the appellate court in *United Food & Commercial Workers Union v. Superior Court* (2000) 83 Cal.App.4th 566 held: "[W]here law enforcement has been summoned, responds in a timely fashion, protects persons from injury and property from damage, and ensures ingress and egress to and from the premises, there is neither an unwillingness nor an inability to furnish adequate protection.

12

Conversely, where law enforcement is unwilling or unable to afford these protections and services, an injunction may lie." (*Id.* at p. 580.)

Here, the trial court found: "Public officers have been unable or unwilling to furnish adequate protection, as law enforcement repeatedly, including in writing, refused to take any action to end [the Union]'s unlawful blocking activity." The trial court summarized the evidence it relied upon in making its finding as follows: "[Smart & Final] demonstrates that its attempt to get the police involved in addressing [the Union]'s blocking activities have proven unsuccessful. [Smart & Final] presents declarations stating multiple reports have been made to the police for assistance but the police have refused to act. For instance, on November 3, 2023, [Smart & Final] sent a letter addressed to Larry Gonzalez, chief of police, requesting assistance with picketers' blocking activities. [Citation.] On or about November 6, 2023, the Assistant City Attorney responded to that letter, asserting that the Riverside Police Department was not responsible or authorized to act and that the conduct of the Union was protected activity under California's Moscone Act. [Citation.] This demonstrates law enforcement's refusal to intervene."

In its opening brief, the Union argues while the trial court made a finding regarding law enforcement's unwillingness to protect against the Union's blocking activity, it did not make a specific finding law enforcement was unable or unwilling to furnish adequate protection as to the Union's conduct (also enjoined in the preliminary injunction) of "'engaging in violent acts or threats of violence against [Smart & Final], its employees, or business partners[] and . . . causing property damage to [Smart & Final], its employees, or business partners.'" The Union argues the court's "failure is fatal to the injunction as to those acts, and this Court must order the injunction vacated at least to that extent."

13

The trial court's above-quoted finding on section 1138.1, subdivision (a)(5) can be broadly construed to implicitly include a finding law enforcement was also unable or unwilling to intervene with respect to violent acts, threats of violence, and acts damaging property because such unlawful conduct was the direct result of law enforcement's primary failure to protect against the Union's unlawful blocking conduct. The Union cites no authority requiring the trial court to have expressly made such additional and specific findings.[4] Furthermore, substantial evidence supports the trial court's implied findings in that respect. (See *Loy v. Kenney, supra*, 85 Cal.App.5th at p. 406 [appellate court reviews whether substantial evidence supports implicit and explicit factual findings in determining whether the court abused its discretion in issuing a preliminary injunction and "[l]ack of specificity does not undermine a finding if the record reveals rational support"].)

In Mullins's November 3, 2023 letter to the police chief, Mullins expressed her "deep concern about an ongoing safety and property-rights issue" at the Facility and asked for the police chief's "immediate intervention to ensure public safety." In that letter, she informed the police chief of the "several instances of near-violence that have been reported to the Riverside Police because the [p]olice will not enforce the law." She added: "With a demonstrated clear and present danger of violence and physical injury,

---

[4] Although the Union filed an amended request for a statement of decision in which it requested the trial court make numerous express findings in support of the order issuing the preliminary injunction, the Union did not therein request specific findings as to law enforcement's inability or unwillingness to protect against violence, threats of violence, and property damage.

14

when/if someone gets hurt because the elected officials and Police of Riverside failed to act, responsibility will lie squarely with the City of Riverside and its Police Department."

In his response, the assistant city attorney broadly disagreed with Mullins and confirmed "the police are not authorized to intervene." In addition, at the hearing on the preliminary injunction, the Facility's general manager, Sergio Agras, testified that during a conversation with officers, the officers told him "their hands were tied and, ultimately, [Smart & Final] would be sitting in front of a judge to decide this, that this was a civil matter." They also told him to refrain from calling 9-1-1 except "for a real emergency."

In its opening brief, the Union argues "[e]ven regarding the blocking of ingress and egress, however, the [s]uperior [c]ourt's conclusion that the police were unable or unwilling to act is contrary to the undisputed evidence. Specifically, on the very first morning of the strike, the police engaged in shuttle diplomacy between Union leadership and Smart & Final's top manager on the scene to try to arrange something workable for both sides regarding the blocking of traffic into and out of the facility. The result was the . . . 'five-minute rule' whereby picketers would walk with their signs and chants for five minutes across the driveway of the warehouse, after which they would break the line and let a vehicle in and out of the facility."

But the trial court found the parties had not reached any such agreement. And that finding is supported by Agras's testimony that, even though he was the one who supposedly made that agreement, he did not and, as he informed law enforcement, could not because he lacked the authority to do so. Therefore, sufficient evidence supports the finding law enforcement

15

was unable to furnish adequate protection from the Union's unlawful conduct within the meaning of section 1138.1, subdivision (a)(5).

*C. Substantial Evidence Shows Smart & Final Made Every Reasonable Effort to Settle the Dispute Within the Meaning of Section 1138.2*

In its final ruling, the trial court acknowledged: "Before an injunction can be issued, [Smart & Final] must demonstrate that it complied with the statutory obligation to make 'every reasonable effort to settle the dispute by negotiation or with the aid of any available governmental machinery or mediation or voluntary arbitration.' (Lab. Code, § 1138.2.)"

The court found it had made such an effort within the meaning of the statute, explaining:

"[Smart & Final] demonstrates that, before the [U]nion picketing began on November 1, 2023, it attempted to negotiate the ongoing labor dispute with the [U]nion, but negotiations proved unsuccessful. For instance, [Smart & Final] represents that the parties met several times beginning July 26, 2023 to negotiate an initial contract, and met several times thereafter on July 27, August 3, September 11, September 12, October 18, and October 19, 2023. [Citation.] [The Union], other than to contend that these efforts were 'perfunctory,' [citation] does not dispute the fact that these negotiation meetings took place.

"[The Union] also argues that [Smart & Final] failed to comply with section 1138.2 by failing to make every effort to settle the dispute concerning the [U]nion's alleged blocking. [Citation.] However, this contention is refuted by Cease & Desist Notices attached to its verified Complaint, which [Smart & Final] sent to [the Union] twice in November of 2023. [Smart & Final] points out that, Lou Villalvazo, the [U]nion's secretary-treasurer, responded by e[-]mail on November 18, 2023, wherein he refused

16

to provide assurance to [Smart & Final]'s request to cease and desist but rather refuted [Smart & Final]'s characterization of the [U]nion's activities as unlawful conduct. [Citation.] Such efforts demonstrate [Smart & Final] did make some efforts to have [the Union] refrain from activities which [Smart & Final] contended were unlawful before bringing the instant motion.

"Based on the foregoing, [Smart & Final] demonstrates it has satisfied the obligation under section 1138.2."

The Union argues the record does not support the finding Smart & Final made *every* reasonable effort to resolve the dispute before seeking the preliminary injunction because it sought an injunction when it had unclean hands. The trial court addressed and rejected this argument in the final ruling as follows: "[The Union] contends that no injunction should issue for reason [Smart & Final] acted with unclean hands. There appears to be evidence showing some amount of hostility was exhibited by both non-striking employees and the picketers, but any hostility received by picketers seems to have been initiated by the picketers' activities of blocking and obstructing traffic. For instance, [the Union]'s supporting declarations also show that the picketers were sometimes met with hostility by other non-striking employees [citations]. [Smart & Final]'s operations manager, Casciani, concedes in his declaration that, on November 1, 2023, a physical altercation almost ensued between h[im] and [U]nion secretary-treasurer, Lou Villalvazo. [Citation.] He also concedes that, on November 3, 2023, the [U]nion picketers completely surrounded the front of the truck, striking the truck with their signs, which . . . almost escalated in a physical altercation between the driver, who brandished a knife, and a picketer who supposedly struck the driver with the wooden stick of a sign. [Citations.] Although evidence demonstrates hostility exerted by both sides, it nonetheless

17

demonstrates that [the Union]'s picketing activities were not peaceful and tended to lead to violence between the [U]nion and the non-union employees. (*Kaplan's Fruit & Produce Co. v. Superior Court* [1979] 26 Cal.3d [60,] 80 ['picketing which obstructs access, because of its tendency to lead to violence, is not the "peaceful picketing" immunized from injunction . . . . '].) For this reason, [the Union] cannot succeed on its defense of unclean hands in support of denying an injunction. Although evidence demonstrates that violence may have erupted from both sides, [the Union] fails to show that [Smart & Final] was at fault in causing the situation to escalate." The Union does not address this portion of the trial court's decision and does not contend its findings therein are unsupported by substantial evidence in the record.

The Union also argues Smart & Final did not make every reasonable effort because it could have done more—namely, it could have mediated the issue of the Union's unlawful conduct with the Federal Mediation and Conciliation Service or sought additional bargaining to resolve the Union's claims that led to the strike. But the statutory language requires the complainant to "make every reasonable effort to settle that dispute *either* by negotiation *or* with the aid of any available governmental machinery of mediation *or* voluntary arbitration." (§ 1138.2, italics added.) Substantial evidence shows Smart & Final met with the Union on numerous occasions in an effort to negotiate an agreement before and after the strike at issue in this case. As the statute uses the word "or," it logically follows it does not require Smart & Final to also mediate with the Federal Mediation and Conciliation Service.

It makes sense the Legislature so limited the scope of the meaning of "every reasonable effort." Otherwise, a complainant would arguably never be able to satisfy the requirement of section 1138.2 and thus

18

never be able to qualify for injunctive relief. In any event, the Union has failed to explain or cite supportive evidence in the record showing how either of the options it mentioned would constitute reasonable efforts under the circumstances of this case.

For the reasons explained *ante*, we conclude substantial evidence supports the trial court's finding Smart & Final engaged in every reasonable effort to resolve the dispute, within the meaning of section 1138.2, before seeking injunctive relief.

## II.

### NATIONAL LABOR RELATIONS ACT PREEMPTION

The Union argues that even if the requirements of sections 1138.1 and 1138.2 are supported by substantial evidence, the trial court lacked jurisdiction to issue the preliminary injunction because the conduct at issue "is subject to the exclusive jurisdiction and competence of the NLRB under the preemption regime created by the United States Supreme Court in *San Diego Building Trades Council v. Garmon* [(1959)] 359 U.S. 236." For the reasons we explain, the Union's preemption argument is without merit.

*A. Overview of Preemption by the National Labor Relations Act*

In *Glacier Northwest v. Intern. Brotherhood Local 174* (2023) 598 U.S. 771 [143 S.Ct. 1403] (*Glacier*), the United States Supreme Court provided the following overview of the National Labor Relations Act (NLRA; 29 U.S.C. § 151 et seq.), the NLRB, and preemption:

"Enacted in 1935, the [NLRA] 'encourag[es] the practice and procedure of collective bargaining' between labor and management to resolve 'industrial disputes arising out of differences as to wages, hours, or other working conditions.' [Citation.] Section 7 of the NLRA protects employees'

19

rights 'to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.' [Citation.] Section 8, in turn, prohibits employers and unions from engaging in certain 'unfair labor practice[s],' such as interfering with employees' exercise of their [section] 7 rights. [Citation.]

"To enforce the NLRA, Congress created the National Labor Relations Board. The Board is authorized 'to prevent any person from engaging in any unfair labor practice' that 'affect[s] commerce.' [Citation.] Its authority kicks in when a person files a charge with the agency alleging that an unfair labor practice is afoot. [Citation.] Agency staff investigate the charge, and if it 'appears to have merit,' the agency issues a complaint against the offending party." (*Glacier, supra*, 143 S.Ct. at p. 1410.)

The *Glacier* court explained: "Sometimes a party to a labor dispute goes directly to a court—raising the specter that state law will say one thing about the conduct underlying the dispute while the NLRA says another. It is a bedrock rule, of course, that federal law preempts state law when the two conflict. [Citation.] Preemption under the NLRA is unusual, though, because our precedent maintains that the NLRA preempts state law even when the two only *arguably* conflict. *San Diego Building Trades Council v. Garmon,* [*supra,*] 359 U.S. [at p.] 245 . . . ('When an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the [NLRB]'). This doctrine— named *Garmon* preemption after the case that originated it—thus goes beyond the usual preemption rule. Under *Garmon*, States cannot regulate conduct 'that the NLRA protects, prohibits, or arguably protects or prohibits.'" (*Glacier, supra*, 143 S.Ct. at p. 1410.) The Supreme Court further

20

explained: "'[W]hen properly invoked,' *Garmon* thus 'tells us not just what law applies (federal law, not state law) but who applies it (the [NLRB], not the state courts or federal district courts).'" (*Id.* at p. 1411.)

B. *The Local Interest Exception to* Garmon *Preemption*

The *Glacier* court recognized the existence of an exception to *Garmon* preemption in "situations 'where the regulated conduct touche[s] interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction,' a court cannot conclude that Congress 'deprived the States of the power to act.'" (*Glacier, supra*, 143 S.Ct. at p. 1411, fn. 1.) This exception has been referred to as the "local interest" exception. (*Wal-Mart Stores, Inc. v. United Food & Commercial Workers Internat. Union* (2016) 4 Cal.App.5th 194, 201 (*Wal-Mart*).)

The test for the local interest exception was articulated in *Sears, Roebuck & Co. v. Carpenters* (1978) 436 U.S. 180 (*Sears*). In *Sears*, the United States Supreme Court held, with respect to conduct arguably prohibited by the NLRA, the following two factors are relevant to the application of this exception: (1) whether there is "a significant state interest in protecting the citizen from the challenged conduct" and (2) whether "the exercise of state jurisdiction over the tort claim entailed little risk of interference with the regulatory jurisdiction of the Labor Board." (*Sears*, at p. 196.) The *Sears* court reiterated in other words, the "critical inquiry" in determining the applicability of the local interest exception is "whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been, but was not, presented to the Labor Board. For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of

21

the Board which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid." (*Id.* at p. 197.)[5]

*C. Applications of the Local Interest Exception*

In *Sears,* union members picketed on Sears's privately owned walkways next to a store and a large parking area. (*Sears, supra*, 436 U.S. at p. 182.) Although the picketing was "peaceful and orderly" (*ibid.*), Sears successfully sought injunctive relief for trespass in the trial court, which was later reversed on appeal to the California Supreme Court (*id.* at p. 183). In response to the question whether the NLRA preempted the state court action, the United States Supreme Court held the local interest exception to *Garmon* preemption applied. (*Sears, supra*, at p. 198.)

The court explained: "In the present case, the controversy which Sears might have presented to the Labor Board is not the same as the controversy presented to the state court. If Sears had filed a charge, the federal issue would have been whether the picketing had a recognitional or work-reassignment objective; decision of that issue would have entailed relatively complex factual and legal determinations completely unrelated to the simple question whether a trespass had occurred. Conversely, in the state action, Sears only challenged the location of the picketing; whether the picketing had an objective proscribed by federal law was irrelevant to the state claim. Accordingly, permitting the state court to adjudicate Sears' trespass claim would create no realistic risk of interference with the Labor Board's primary jurisdiction to enforce the statutory prohibition against unfair labor practices." (*Sears, supra*, 436 U.S. at p. 198, fn. omitted.)

---

[5] This test has been referred to as the "'identical controversy'" test. (*Wal-Mart, supra*, 4 Cal.App.5th at p. 204.)

In *Kaplan's Fruit & Produce Co. v. Superior Court, supra*, 26 Cal.3d at page 65 (*Kaplan*), a produce company sought a preliminary injunction to restrain union picketers from obstructing ingress and egress to one of its facilities. The union argued, inter alia, the Agricultural Labor Relations Act (ALRA; § 1140 et seq.) divested the trial court of jurisdiction. (*Kaplan, supra*, p. 65.) Although the trial court "found 'mass picketing . . . interfere[d] with ingress and egress,'" it did not grant injunctive relief on the ground it lacked jurisdiction to do so. (*Ibid.*)

After concluding the trial court had jurisdiction to issue an injunction, the California Supreme Court mandated that the trial court vacate its order denying a preliminary injunction and reconsider whether to grant the requested relief. (*Kaplan, supra*, 26 Cal.3d at p. 66.) The court explained: "Since the [NLRA] served as the model for the ALRA, decisions interpreting the national act are persuasive in construing the California law. Those decisions hold that the exclusive jurisdiction of the NLRB to adjudicate charges of unfair labor practices does not preempt the power of the local court to enjoin obstructions to access; they indicate that, because blocking of customer access does not in itself constitute an unfair labor practice, an injunction restraining such conduct presents no significant risk of an impairment of board adjudication. Following the federal precedents, we construe the ALRA to permit superior courts to enjoin obstruction to access in private suits for injunctive relief." (*Id.* at p. 65; see *id.* at p. 71 ["[T]he issue which may be presented to the labor board in a case of obstruction of access is different from, and far narrower than, the issue which may be presented to the superior court"].) Accordingly, the *Kaplan* court held "the ALRA does not divest the superior courts of jurisdiction, in a suit by private parties, to enjoin obstructions to access." (*Id.* at p. 75.)

23

Finally, in *Wal-Mart, supra*, 4 Cal.App.5th at page 197, Walmart sought to enjoin union demonstrations inside its stores. The appellate court concluded Wal-Mart's civil complaint focused on the location of the demonstration, not its content, and did not call upon the trial court to consider whether the challenged conduct interfered with employee rights under the NLRA. (*Id.* at pp. 206–207.) Wal-Mart's civil complaint, therefore, was not subject to *Garmon* preemption because the state court's adjudication of that controversy would not realistically interfere with the NLRB's jurisdiction. (*Id.* at p. 211.)

*D. Assuming the Underlying Conduct is Arguably Prohibited by the NLRA, the Local Interest Exception Applies Here*

We need not decide whether the preliminary injunction issued in the instant case enjoins conduct arguably prohibited by the NLRA, because even if it does, the local interest exception to *Garmon* preemption applies. Smart & Final's claims for nuisance and intentional interference with prospective economic advantage challenged the Union's conduct of blocking ingress and egress from the Facility and the violence, threatened violence, and property damage flowing from that blocking conduct. Smart & Final sought injunctive relief on the ground the picketing was unlawful because it blocked the ingress and egress of third parties, vendors, delivery drivers, and nonstriking employees. As in *Sears, supra*, 436 U.S. 180, this case does not present the scenario of a court being asked to keep union picketers from picketing, irrespective of location (the picketing itself). The controversy was not at all based on the objective, target, or effect of the picketing.

Consequently, under such circumstances, allowing the trial court to adjudicate the preliminary injunction created "no realistic risk of interference" with the NLRB's exclusive jurisdiction to enforce the statutory

24

prohibition against unfair labor practices. (*Sears, supra*, 436 U.S. at p. 198.) The trial court therefore had jurisdiction to issue the preliminary injunction in this case. (*Ibid.*) We find no error.

DISPOSITION

The order is affirmed. Respondent to recover costs on appeal.

MOTOIKE, ACTING P. J.

WE CONCUR:


GOODING, J.


SCOTT, J.

25